

FILED
RICHARD W. NAGEL
CLERK OF COURT

2017 JUL 20  AM 9: 42

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:17CR 089 |
| | : | |
| **Plaintiff,** | : | WEST DIV CINCINNATI |
| | : | |
| v. | : | **JUDGE BLACK** |
| | : | |
| | : | **I N D I C T M E N T** |
| | : | |
| | : | |
| KEYSEAN DEARIS DICKEY (1) | : | 18 U.S.C. § 2 |
|    a/k/a "Mike" | : | 18 U.S.C § 922(g)(1) |
| EDMOND CHRISTIAN HURT (2) | : | 18 U.S.C. § 924(a)(2) |
|    a/k/a "Eddie" | : | 18 U.S.C. § 924(c)(1)(A)(i) |
| RAJAH AMIRE SWAIN (3) | : | 18 U.S.C. § 1956(a)(1)(A)(i) |
| CHRISETTE CAMILLA WADE (4) | : | 18 U.S.C. § 1956(h) |
| ARI NAIEM HODGES (5) | : | 21 U.S.C. § 841(a)(1) |
|    a/k/a "Big Mike" "Fat Mike" | : | 21 U.S.C. § 841(b)(1)(A)(vi) |
|    "Bundles" | : | 21 U.S.C. § 841(b)(1)(B)(vi) |
| DA'MARCO MARTEZ BROWNER II (6) | : | 21 U.S.C. § 841(C) |
|    a/k/a "Baby D" "Kid" | : | 21 U.S.C. § 846 |
| DOMINIC DASHAWN DAVIS (7) | : | 21 U.S.C. § 856(a)(2) |
| CHAZ NIKO JONES (8) | : | |
|    a/k/a "Juice" "Z" | : | |
| CHRISTOPHER JAVAR MATHEWS (9) | : | |
|    a/k/a "Jay" "Smash" | : | **NOTICE OF FORFEITURE** |
| KIARRA C. THOMAS (10) | : | |
| MYKEAL DASHAWN PARKER (11) | : | |
| DEVONTE SHAUNQUINN WALKER | : | |
| (12) | : | |
| DAMYIA L. ENGRAM (13) | : | |
| THOMESHA WALKER (14) | : | |
| SHONDA DENISE JONES (15) | : | |
| SHERICA LYNNAE SHIELDS (16) | : | |
| | : | |
| **Defendants.** | : | |

**THE GRAND JURY CHARGES THAT:**

## COUNT 1
### (NARCOTICS CONSPIRACY)

## A. THE CONSPIRACY

    From on or about September 2016 until on or about June 26, 2017, in the Southern District

of Ohio, and elsewhere, **KEYSEAN DEARIS DICKEY a/k/a "Mike", EDMOND CHRISTIAN HURT a/k/a "Eddie", RAJAH AMIRE SWAIN, CHRISETTE CAMILLA WADE, ARI NAIEM HODGES a/k/a "Big Mike" "Fat Mike" "Bundles", DA'MARCO MARTEZ BROWNER II a/k/a "Baby D" "Kid", DOMINIC DASHAWN DAVIS, CHAZ NIKO JONES a/k/a "Juice" "Z", CHRISTOPHER JAVAR MATHEWS a/k/a "Jay" "Smash", KIARRA C. THOMAS, MYKEAL DASHAWN PARKER, DEVONTE SHAUNQUINN WALKER, DAMYIA L. ENGRAM, THOMESHA WALKER, SHONDA DENISE JONES, SHERICA LYNNAE SHIELDS,** the defendants herein, and others both known and unknown to the grand jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit: to knowingly, willfully, intentionally and unlawfully possess with intent to distribute and to distribute four hundred (400) grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi) and (b)(1)(B)(vi) and (C).

## B. GOAL OF THE CONSPIRACY

It was a goal of the conspiracy that, in order to obtain as much money and other things of value as possible, certain of the defendants and co-conspirators acquired fentanyl mixtures and other narcotic substances, for the purpose of distributing them in the Southern District of Ohio. At all times in this Indictment, the term "fentanyl" refers to the Schedule II Controlled Substance illegally obtained and distributed.

It was also a goal of the conspiracy that, in order to obtain money and other things of value for themselves, certain of the defendants and co-conspirators provided storage for, and thus aided in the distribution of, fentanyl mixtures; stored illicit proceeds gained from sales of fentanyl mixtures and other narcotics; and engaged in financial transactions which had the effect of

promoting, and did promote, the narcotics trafficking activities in this Indictment, in the Southern District of Ohio and elsewhere.

## C. **WAYS, MANNER, AND MEANS TO ACCOMPLISH THE CONSPIRACY**

The ways, manner and means by which the co-conspirators operated their illegal drug trafficking organization, include, *but are not limited to* the following:

It was part of the conspiracy that the defendants would, and did, play different roles in the conspiracy, perform different tasks and participate in the conduct of the organization through various criminal acts. The defendants made themselves and their services available at various times throughout the life of the conspiracy and participated in certain drug trafficking ventures as required to promote and protect the illegal drug distribution operation. The roles assumed by some defendants were interchangeable at various times throughout the conspiracy. Some of the roles assumed and carried out by the defendants included, among others, leader, supplier of drugs, packager, holder, intermediary, helper, stash house operator, and launderer of drug proceeds.

It was further part of the conspiracy that the defendants and co-conspirators used cellular telephones to facilitate their illegal drug business, and worked cooperatively using several cellular telephones to ensure that their illegal drug business served as many customers as possible.

It was further part of the conspiracy that certain of the defendants and co-conspirators obtained and used rental cars to transport, store and conceal fentanyl mixtures and proceeds from their illicit activities, and to aid in concealing their drug trafficking activities from law enforcement.

It was further part of the conspiracy that the defendants and co-conspirators possessed firearms in order to protect themselves, money and illegal drugs.

It was further part of the conspiracy that fentanyl was processed, cut, packaged, and stored prior to distribution to members of the conspiracy and/or customers, in safe locations, known as stash houses, located in and around the city of Cincinnati, Ohio, and elsewhere in the Southern

District of Ohio. The defendants and others used stash houses to store fentanyl and fentanyl mixtures, firearms, narcotics-processing and packaging materials, and monies obtained through the illegal sale of controlled substances, primarily fentanyl mixtures, in order to avoid their detection.

It was further a part of the conspiracy that certain of the defendants and co-conspirators would make available their properties to store and process fentanyl mixtures for distribution and to store or conceal U.S. currency generated from the sale of fentanyl mixtures, as well to conceal and store firearms available to protect both controlled substances and the proceeds of their illegal drug trafficking business.

It was further a part of the conspiracy that certain of the defendants and co-conspirators would launder the illegal proceeds/profits by conducting financial transactions in a manner to promote the specified unlawful activity, for which they would receive compensation in the form of U.S. currency, use of vehicles, or other things of value.

## D. OVERT ACTS

In furtherance of the conspiracy and in order to accomplish its objectives, the defendants, **KEYSEAN DEARIS DICKEY a/k/a "Mike", EDMOND CHRISTIAN HURT a/k/a "Eddie", RAJAH AMIRE SWAIN, CHRISETTE CAMILLA WADE, ARI NAIEM HODGES a/k/a "Big Mike" "Fat Mike" "Bundles", DA'MARCO MARTEZ BROWNER II a/k/a "Baby D" "Kid", DOMINIC DASHAWN DAVIS, CHAZ NIKO JONES a/k/a "Juice" "Z", CHRISTOPHER JAVAR MATHEWS a/k/a "Jay" "Smash", KIARRA C. THOMAS, MYKEAL DASHAWN PARKER, DEVONTE SHAUNQUINN WALKER, DAMYIA L. ENGRAM, THOMESHA WALKER, SHONDA DENISE JONES,** and **SHERICA LYNNAE SHIELDS** committed, among others, the following:

1. From at least August 2016 to on or about October 5, 2016, **CHRISTOPHER MATHEWS** sent and/or received text messages discussing meeting with people who

asked to meet with **CHRISTOPHER MATHEWS** and complained about quality, getting "shorted" or asking for "fronts" on drugs.

2. From at least August 2016 to on or about October 5, 2016, **CHRISTOPHER MATHEWS** sent text messages out to customers that stated "tester" or "Fire in" letting them know when a new batch was in and they could try it out.

3. On or about August 13, 2016, **CHRISTOPHER MATHEWS** received a text from "Kev" that stated: "One of them is .82 the other is a .76 . Chris ur fuckin scale is off . I can take my grand a week else where ! Fuckin bullshit !".

4. On or about September 14, 2016, **CHRISTOPHER MATHEWS** received a text: "bro I cant barely move im so sick but no money yet today."  And: "Can I get a little bit on credit?" to which **MATHEWS** responds: "Got u much u got"

5. On or about October 5, 2016, **CHRISTOPHER MATHEWS** received a text: "throw me a tester too for bringin you the business will ya?" **MATHEWS** responds: "I got u."

6. On or about October 9, 2016, **CHRISTOPHER MATHEWS** received a text: "Thankd for 7 tenths not…but this shit gettin supppeerr weak btw kinda sucks a lil".

7. On or about October 10, 2016, **CHRISTOPHER MATHEWS** received multiple text messages: "I swear to god these people spend everyday I need them I swear its 2.9 on the dot."; "3 and a half grams and a 6 tenths separate"; "So 3 in one and 6 tenths in the other" "Bra smash don't do that I don't want them thinkin I do it and I can get my 6 tenths thanks smash man".

8. On or about October 11, 2016, **CHRISTOPHER MATHEWS** was arrested by state law enforcement officers for trafficking drugs.

9. In October 2016, **CHRISTOPHER MATHEWS** possessed phones with numbers 513-545-8722 and 513-544-3998, which contained text messages from people talking

about the quality and weight in grams as well as meeting up with "Smash" (**MATHEWS**).

10. On or about November 18, 2016, **CHRISTOPHER MATHEWS** distributed a mixture or substance containing a detectable amount of fentanyl.

11. On or about December 1, 2016, **KEYSEAN DICKEY** distributed a mixture or substance containing a detectable amount of fentanyl.

12. On or about December 8, 2016, **KEYSEAN DICKEY** distributed a mixture or substance containing a detectable amount of fentanyl.

13. On or about December 9, 2016, **RAJAH AMIRE SWAIN** signed the lease for 5224 Mason Grand Drive.

14. On or about December 15, 2016, **CHAZ JONES** distributed a mixture or substance containing a detectable amount of fentanyl.

15. On or about December 19, 2016, **KEYSEAN DICKEY** distributed a mixture or substance containing a detectable amount of fentanyl.

16. On or about December 28, 2016, **MYKEAL PARKER** distributed a mixture or substance containing a detectable amount of fentanyl.

17. On or about January 4, 2017, **KIARRA THOMAS** distributed a mixture or substance containing a detectable amount of fentanyl.

18. On or about January 6, 2017, **MYKEAL PARKER** distributed a mixture or substance containing a detectable amount of fentanyl.

19. On or about January 12, 2017, **CHRISTOPHER MATHEWS** distributed a mixture or substance containing a detectable amount of fentanyl.

20. On or about January 19, 2017, **DEVONTE WALKER** distributed a mixture or substance containing a detectable amount of fentanyl.

21. On or about January 20, 2017, **DEVONTE WALKER** along with **CHAZ JONES** distributed a mixture or substance containing a detectable amount of fentanyl.

22. On or about January 26, 2017, **DEVONTE WALKER** engaged in text messaging with **KEYSEAN DICKEY** about a scale being left in a vehicle.

23. On or about January 29, 2017 **DEVONTE WALKER** received a text message: "I am trying to bother you man I'm going out of town I just don't want to be sick".

24. On or about January 31, 2017, **DEVONTE WALKER** received a text message that stated: "Well you told me to come to Williamsburg appt at 330am when I got there you didn't answer the phone. I was so pissed at you!!!!!!!;;"

25. On or about February 1, 2017, **DEVONTE WALKER** was arrested and multiple phones were seized from his person.

26. On or about February 1, 2017, **DEVONTE WALKER** possessed a mixture or substance containing a detectable amount of fentanyl, and scales and cellular telephones used in the distribution of fentanyl mixtures, and U.S. currency which was the proceeds of illegal drug trafficking.

27. On or about February 20, 2017, **KIARRA THOMAS** distributed a mixture or substance containing a detectable amount of fentanyl.

28. On or about March 8, 2017, **CHAZ JONES** distributed a mixture or substance containing a detectable amount of fentanyl.

29. On or about March 8, 2017, **ARI HODGES** received text messages talking about CPD officers suiting up behind a Walgreens.

30. On or about March 8, 2017, **ARI HODGES** received text messages: "Mike I'm not gonna be a whinny bitch but you said you got me earlier ? Please help me babe."; "I don't know if that was your shit or the other guys stuff but that was pure garbage. Did absolutely nothing. Big waste of $70! Pure waste."

31. On or about March 15, 2017, **CHAZ JONES** distributed a mixture or substance containing a detectable amount of fentanyl.

32. On or about March 22, 2017, **ARI HODGES** sent text messages to several different phone numbers saying "This fat mike" which is what several sources of information and customers of the DTO have referred to as HODGES. HODGES receives a text: "Hey man you gonna be serving on Friday cause imma come through and get few G's wanna make sure you're gonna be on" HODGES responds: "I will its fat mike I got my phones"

33. On or about March 23, 2017, **ARI HODGES** sent a text message that said: "I got white this fat Mike" and received the return text: "Wish you was around yesterday I got a ball and I swear half of it was cut the s*** just ran right back out my f****** nose...mother f***** said it was coming from you and I realized when I got there and he walked up to my truck that he was full of s*** some kind of pissed off at whoever the hell that was yesterday"

34. On or about March 24, 2017, **ARI HODGES** received a text: "Good looking out Mike. I want to start coming to you. I just didn't have your number. I come 3 or 4 times a day. I been spending big. Is that cool?" to which **HODGES** responded: "YeA"

35. On or about March 28, 2017, state law enforcement officers initiated a stop of a vehicle operated by **ARI HODGES** with **CHAZ JONES**, but **HODGES** drove through the Hook, Fish and Chicken restaurant prior to stopping in order for them to dispose of digital scales behind that restaurant, sending two text messages after the stop: "What r you talkin bout I jus got hit bye the cops"; "I threw my shit".

36. On or about April 4, 2017, **DA'MARCO BROWNER** distributed a mixture or substance containing a detectable amount of fentanyl.

37. On or about April 6, 2017, **KIARRA THOMAS** distributed a mixture or substance containing a detectable amount of fentanyl.

38. On or about April 6, 2017, **ARI HODGES** was arrested by state law enforcement officers for drug trafficking.

39. On or about April 13, 2017, **KIARRA THOMAS** distributed a mixture or substance containing a detectable amount of fentanyl.

40. On or about April 20, 2017, **SHERICA SHIELDS** signed a lease for 1609 Governor Terrace.

41. On or about April 20, 2017, **THOMESHA WALKER** subscribed utilities for 1609 Governor Terrace.

42. On or about April 25, 2017, **DA'MARCO BROWNER** distributed a mixture or substance containing a detectable amount of fentanyl.

43. On or about May 15, 2017, **THOMESHA WALKER** rented 2108 Washington Circle and placed utilities in her name.

44. On or about May 23, 2017, **KEYSEAN DICKEY** distributed a mixture or substance containing a detectable amount of fentanyl.

45. On or about June 1, 2017, **CHAZ JONES** and **KEYSEAN DICKEY** discussed **ARI HODGES** customer phone being held ransom by **HODGES'** mother (and thus, not being used).

46. On or about June 1, 2017: **DOMINIC DAVIS** spoke with **KEYSEAN DICKEY** about **DICKEY** having a "half," they discussed a bad batch of suspected fentanyl, and **DAVIS's** "brother" having phones (customer telephones).

47. On or about June 2, 2017, **DOMINIC DAVIS** spoke with **KEYSEAN DICKEY** about possible surveillance.

48. On or about June 2, 2017, **DA'MARCO BROWNER** asked **KEYSEAN DICKEY** to work the customer phone on Sunday (June 4, 2017).

49. On or about June 2, 2017, **EDMOND HURT** and **KEYSEAN DICKEY** discussed having 60 "yams" (believed to be half-gram or gram increments of fentanyl).

50. On or about June 5, 2017, **DAMYIA ENGRAM** and **KEYSEAN DICKEY** discussed returning a vehicle, and **ENGRAM** asked him for money.

51. On or about June 5, 2017, **EDMOND HURT** and **KEYSEAN DICKEY** discussed adding up drugs and money, and **HURT** relayed that there were 8 ounces and about $17,000.

52. On or about June 6, 2017, **EDMOND HURT** and **KEYSEAN DICKEY** discussed other dealers selling bad dope, which affects their business, and about undercover police.

53. On or about June 7, 2017, **EDMOND HURT** and **KEYSEAN DICKEY** discussed re-supplying [runners].

54. On or about June 7, 2017, **KEYSEAN DICKEY** and **DAMYIA ENGRAM** discussed calling the rental company and getting sent out to the airport to get a car.

55. On or about June 9, 2017 **DA'MARCO BROWNER** informed **KEYSEAN DICKEY** that he was at "the spot" (1609 Governor Terrace, Cincinnati, Ohio).

56. On or about June 9, 2017, **EDMOND HURT** and **KEYSEAN DICKEY** discussed the "count" and **HURT** revealed that the money was being kept in a shoebox.

57. On or about June 9, 2017, June 11, 2017, and June 20, 2017, **KEYSEAN DICKEY** called **THOMESHA WALKER** and told **WALKER** to let him in.

58. On or about June 10, 2017, **CHAZ JONES** and **KEYSEAN DICKEY** discussed meeting at Williamsburg.

59. On or about June 10, 2017, **EDMOND HURT** and **KEYSEAN DICKEY** discussed meeting at "the spot" (1609 Governor Terrace, Cincinnati, Ohio).

60. On or about June 12, 2017, **DOMINIC DAVIS** and **KEYSEAN DICKEY** stood in front of 4502 Williamsburg Road while **DICKEY** was distributing drugs to customers.

61. On or about June 12, 2017, after a marked patrol cruiser drove through Williamsburg, **KEYSEAN DICKEY** spoke with **DOMINIC DAVIS** and told **DAVIS** that state troopers were in the area, and **DAVIS** told **DICKEY** that he "was about to come back down…I'm out…"

62. On or about June 13, 2017, **DOMINIC DAVIS** asked **KEYSEAN DICKEY** for half or "an ounce or something" because his people are trying to do a "quick and mix."

63. On or about June 18, 2017, in a telephone conversation between **SHONDA JONES** and **KEYSEAN DICKEY**, **DICKEY** told **JONES** that he (**DICKEY**) is about to "bust these moves."

64. On or about June 18, 2017, **DOMINIC DAVIS** told **KEYSEAN DICKEY** that his girlfriend's car has expired registration and told **DICKEY** he wants **DICKEY** to give **DAVIS'** girlfriend $500 for a car rental.

65. On or about June 19, 2017, **DAMYIA ENGRAM** and **KEYSEAN DICKEY** discussed taking a rental vehicle back, and **ENGRAM** asked **DICKEY** to put money into her Chase bank account first, to which **DICKEY** agrees.

66. On or about June 19, 2017, **ENGRAM** told **KEYSEAN DICKEY** that she had to hit licks just like he hits licks.

67. On or about June 20, 2017, **KIARRA THOMAS** and **KEYSEAN DICKEY** discussed having "three and a half" (believed to be 3 and a half ounces of fentanyl), and calling each other.

68. On or about June 21, 2017, **KIARRA THOMAS** and **KEYSEAN DICKEY** discussed the quality of the drugs they have, taking money to people, and getting "shorted." **DICKEY** says he will call the guy.

69. On or about June 21, 2017, **KEYSEAN DICKEY** revealed to **KIARRA THOMAS** that his "peoples" had "9" (believed to be 9 ounces of fentanyl) for **THOMAS**.

70. On or about June 21, 2017, **KEYSEAN DICKEY** told **KIARRA THOMAS** the price would be $22,500 ($2,500 per ounce).

71. On or about June 23, 2017, **SHERICA SHIELDS** and **KEYSEAN DICKEY** discuss getting the keys for 7303 Constitution Drive on Monday (June 26, 2017). DICKEY tells SHIELDS that "she" already switched the "stuff" over yesterday (June 22, 2017).

72. On or about June 23, 2017 **THOMESHA WALKER** subscribed utilities at 7303 Constitution Drive, Cincinnati, Ohio.

73. On or about June 23, 2017, **KIARRA THOMAS** asked **KEYSEAN DICKEY** to call his "people" for about "7" (believed to be 7 ounces of fentanyl). **DICKEY** said he would call real quick.

74. On or about June 26, 2017, **CHAZ JONES** was found and arrested at 1609 Governor Terrace, Cincinnati, Ohio, wherein were also seized two firearms, 9mm ammunition, suspected Fentanyl, marijuana, drug press parts, and $3,050 in United States currency.

75. On or about June 26, 2017, **THOMESHA WALKER** and **SHERICA SHIELDS** were inside 2108 Washington Circle when police announced their presence. Upon execution of the search warrant, police observed that the apartment smelled heavily of bleach and a scale and blender were located completely clean, but in the apartment there were two bags filled with a white powder marked "Mannitol" and $13,987.70 in United States currency.

In violation of 21 U.S.C. § 846.

### COUNT 2
### (POSSESSION OF FENTANYL WITH INTENT TO DISTRIBUTE)

On or about June 26, 2017, in the Southern District of Ohio, defendants **KEYSEAN DEARIS DICKEY a/k/a "Mike", EDMOND CHRISTIAN HURT a/k/a "Eddie", RAJAH AMIRE SWAIN, CHRISETTE CAMILLA WADE, ARI NAIEM HODGES a/k/a "Big Mike" "Fat Mike" "Bundles", DA'MARCO MARTEZ BROWNER II a/k/a "Baby D" "Kid", DOMINIC DASHAWN DAVIS, CHAZ NIKO JONES a/k/a "Juice" "Z", KIARRA C. THOMAS, MYKEAL DASHAWN PARKER, DAMYIA L. ENGRAM, THOMESHA WALKER, SHONDA DENISE JONES, SHERICA LYNNAE SHIELDS,** knowingly and intentionally possessed forty (40) grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi) and 18 U.S.C. § 2,
and Pinkerton v. United States, 328 U.S. 640 (1946).

### COUNT 3
### (DISTRIBUTION OF FENTANYL)

On or about December 1, 2016, in the Southern District of Ohio, defendant **KEYSEAN DEARIS DICKEY a/k/a "Mike"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 4
### (DISTRIBUTION OF FENTANYL)

On or about December 15, 2016, in the Southern District of Ohio, defendant **CHAZ NIKO JONES a/k/a "Juice" "Z"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 5
### (DISTRIBUTION OF FENTANYL)

On or about December 8, 2016, in the Southern District of Ohio, defendant **KEYSEAN DEARIS DICKEY a/k/a "Mike"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 6
### (DISTRIBUTION OF FENTANYL)

On or about December 19, 2016, in the Southern District of Ohio, defendant **KEYSEAN DEARIS DICKEY a/k/a "Mike"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 7
### (DISTRIBUTION OF FENTANYL)

On or about May 23, 2017, in the Southern District of Ohio, defendant **KEYSEAN DEARIS DICKEY a/k/a "Mike"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 8
### (DISTRIBUTION OF FENTANYL)

On or about April 25, 2017, in the Southern District of Ohio, defendant **DA'MARCO MARTEZ BROWNER II a/k/a "Baby D" "Kid"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 9
### (DISTRIBUTION OF FENTANYL)

On or about January 12, 2017, in the Southern District of Ohio, defendant **CHRISTOPHER JAVAR MATHEWS a/k/a "Jay" "Smash"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 10
### (DISTRIBUTION OF FENTANYL)

On or about January 20, 2017, in the Southern District of Ohio, defendants **CHAZ NIKO JONES a/k/a "Juice" "Z" and DEVONTE SHAUNQUINN WALKER** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 11
### (DISTRIBUTION OF FENTANYL)

On or about March 8, 2017, in the Southern District of Ohio, defendant **CHAZ NIKO JONES a/k/a "Juice" "Z"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 12
### (DISTRIBUTION OF FENTANYL)

On or about March 15, 2017, in the Southern District of Ohio, defendant **CHAZ NIKO JONES a/k/a "Juice" "Z"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 13
### (DISTRIBUTION OF FENTANYL)

On or about November 18, 2016, in the Southern District of Ohio, defendant **CHRISTOPHER JAVAR MATHEWS a/k/a "Jay" "Smash"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 14
### (DISTRIBUTION OF FENTANYL)

On or about January 4, 2017, in the Southern District of Ohio, defendant **KIARRA C. THOMAS** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 15
### (DISTRIBUTION OF FENTANYL)

On or about February 20, 2017, in the Southern District of Ohio, defendant **KIARRA C. THOMAS** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 16
### (DISTRIBUTION OF FENTANYL)

On or about April 4, 2017, in the Southern District of Ohio, defendant **DA'MARCO MARTEZ BROWNER II a/k/a "Baby D" "Kid"** knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 17
### (DISTRIBUTION OF FENTANYL)

On or about April 6, 2017, in the Southern District of Ohio, defendant **KIARRA C.**

**THOMAS** knowingly and intentionally distributed a mixture or substance containing a detectable

amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 18
### (DISTRIBUTION OF FENTANYL)

On or about April 13, 2017, in the Southern District of Ohio, defendant **KIARRA C.**

**THOMAS** knowingly and intentionally distributed a mixture or substance containing a detectable

amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 19
### (DISTRIBUTION OF FENTANYL)

On or about December 28, 2016, in the Southern District of Ohio, defendant **MYKEAL**

**DASHAWN PARKER** knowingly and intentionally distributed a mixture or substance containing

a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 20
### (DISTRIBUTION OF FENTANYL)

On or about January 6, 2017, in the Southern District of Ohio, defendant **MYKEAL**

**DASHAWN PARKER** knowingly and intentionally distributed a mixture or substance containing

a detectable amount of fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

### COUNT 21
### (MAINTAINING A DRUG-INVOLVED PREMISES)

From on or about April 20, 2017, and continuing thereafter from time to time until June

26, 2017, in the Southern District of Ohio, defendant **SHERICA LYNNAE SHIELDS**, while

managing and controlling premises at 1609 Governor Terrace, Cincinnati, Ohio, as a lessee/renter, knowingly and intentionally made available for use, with and without compensation said premises for the purpose of unlawfully storing fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2.

### COUNT 22
### (MAINTAINING A DRUG-INVOLVED PREMISES)

From on or about June 12, 2017, and continuing thereafter from time to time until June 26, 2017,, in the Southern District of Ohio, defendant **CHRISETTE CAMILLA WADE**, while managing and controlling premises at 4502 Williamsburg Road, Cincinnati, Ohio, as a lessee/renter, knowingly and intentionally made available for use, with and without compensation said premises for the purpose of unlawfully storing fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2.

### COUNT 23
### (FELON IN POSSESSION OF A FIREARM)

On or about June 26, 2017, in the Southern District of Ohio, defendant **KEYSEAN DEARIS DICKEY a/k/a "Mike"**, having been convicted of crimes punishable by imprisonment for a term exceeding one (1) year, that is, Possession of Cocaine, in case number B 1000853-A, and Trafficking in Cocaine, in case number B 1107195, all in the Hamilton County Court of Common Pleas, Hamilton County, Ohio, did knowingly possess at 4502 Williamsburg Road, Cincinnati, Ohio, a firearm in and affecting commerce, to wit: a loaded FN .57 caliber pistol, serial number 386148033, which had been shipped or transported in interstate commerce.

In violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2) and 18 U.S.C. § 2.

### COUNT 24
### (POSSESSION OF A FIREARM IN FURTHERANCE OF
### A DRUG TRAFFICKING CRIME)

On or about June 26, 2017, in the Southern District of Ohio, defendant **KEYSEAN DEARIS DICKEY a/k/a "Mike"**, in furtherance of a drug trafficking offense for which

**KEYSEAN DEARIS DICKEY a/k/a "Mike"** could be prosecuted in a court of the United States, did possess a firearm, to wit:  a loaded FN .57 caliber pistol, serial number 386148033.

In violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 18 U.S.C. § 2.

### COUNT 25
### (MONEY LAUNDERING CONSPIRACY)

## A.  THE CONSPIRACY

Beginning in or about September 2016, and continuing up to June 26, 2017, in the Southern District of Ohio, defendants **KEYSEAN DEARIS DICKEY a/k/a "Mike", RAJAH AMIRE SWAIN, SHONDA DENISE JONES, DAMYIA L. ENGRAM, SHERICA LYNNAE SHIELDS** and **THOMESHA WALKER** did knowingly, intentionally, and unlawfully conspire to conduct financial transactions affecting interstate commerce, which involved the proceeds of specified unlawful activity, that is narcotics trafficking, with the intent to promote the carrying on of specified unlawful activity, to wit: the sale or distribution of controlled substances as defined in the Controlled Substances Act and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i).

## B.  **GOAL OF THE CONSPIRACY**

It was a goal of the conspiracy that **KEYSEAN DEARIS DICKEY a/k/a "Mike", RAJAH AMIRE SWAIN, SHONDA DENISE JONES, DAMYIA L. ENGRAM, SHERICA LYNNAE SHIELDS** and **THOMESHA WALKER** and others would launder illegal proceeds/profits from illegal narcotics trafficking, by knowingly conducting and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, narcotics trafficking, with the intent to promote the carrying on of specified unlawful activity, to wit: the sale or distribution of controlled substances as defined in the Controlled Substances Act and that while conducting and attempting

to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

## C. <u>WAYS, MANNER, AND MEANS TO ACCOMPLISH THE CONSPIRACY</u>

It was a part of the conspiracy that **KEYSEAN DEARIS DICKEY a/k/a "Mike"** provided United States currency to **RAJAH AMIRE SWAIN, SHONDA DENISE JONES, DAMYIA L. ENGRAM, SHERICA LYNNAE SHIELDS** and **THOMESHA WALKER** for their personal use, and for their use in obtaining rental vehicles which were then used by **DICKEY** and other DTO members in illegal narcotics distribution activities, and which were used by **SWAIN and SHIELDS** to transport proceeds/currency from illegal narcotics distribution by DTO members.

It was further part of the conspiracy that **RAJAH AMIRE SWAIN, SHONDA DENISE JONES, DAMYIA L. ENGRAM** and **SHERICA LYNNAE SHIELDS** used credit cards to obtain the rental vehicles used in illegal narcotics distribution activities and used by **SWAIN, JONES, ENGRAM** and **SHIELDS** to transport proceeds/currency from illegal narcotics distribution by DTO members.

It was further part of the conspiracy that **KEYSEAN DEARIS DICKEY, RAJAH AMIRE SWAIN, SHONDA DENISE JONES, DAMYIA L. ENGRAM, SHERICA LYNNAE SHIELDS** and **THOMESHA WALKER** committed the following acts:

1. On or about September 19, 2016, **RAJAH SWAIN** made a payment of $250 to EAN Holdings dba Enterprise Rental Cars, in order to rent a gray Nissan Altima (E212185), using VISA card xxxxxxxxxxxx5799.

2. On or about September 19, 2016, **DAMYIA ENGRAM** made a payment of $247.98 to Avis Budget Group, in order to rent a red Nissan Altima (QFP6235), using MASTERCARD credit card xxxxxxxxxxxx8920.

3. On or about September 27, 2016, **DAMYIA ENGRAM** made a payment of $186.28 to Avis Budget Group, in order to rent a white Ford Escape (BPBQ27), using MASTERCARD credit card xxxxxxxxxxxx8920.

4. On or about October 4, 2016, **DAMYIA ENGRAM** made a payment of $197.68 to Avis Budget Group, in order to rent a silver Subaru XVCR (GVN7813), using MASTERCARD credit card xxxxxxxxxxxx8920.

5. On or about October 7, 2016, **RAJAH SWAIN** made a payment of $515.26 to EAN Holdings dba Enterprise Rental Cars, in order to rent a white Hyundai Santa Fe (GSK9291), using VISA card xxxxxxxxxxxx5799.

6. On or about October 21, 2016, **RAJAH SWAIN** made a payment of $540.44 to EAN Holdings dba Enterprise Rental Cars, in order to rent a black Nissan Maxima (GXF3417), using VISA card xxxxxxxxxxxx4368.

7. On or about December 9, 2016, **RAJAH SWAIN** signed the lease for 5224 Mason Grand Drive.

8. On or about December 15, 2016, **DAMYIA ENGRAM** made a payment of $659.02 to EAN Holdings dba Enterprise Rental Cars, in order to rent a black GMC Yukon (GXV8665), using MASTERCARD credit card xxxxxxxxxxxx8920.

9. On or about January 20, 2017, **RAJAH SWAIN** made a payment of $612.09 to EAN Holdings dba Enterprise Rental Cars, in order to rent a brown Nissan Altima (GXV8554), using VISA credit card xxxxxxxxxxxx2512.

10. On or about February 15, 2017, **DAMYIA ENGRAM** made a payment of $101.92 to Avis Budget Group, in order to rent a red Hyundai Accent (GPF5904), using MASTERCARD credit card xxxxxxxxxxxx5012.

11. On or about February 22, 2017, **RAJAH SWAIN** made a payment of $886.99 to EAN Holdings dba Enterprise Rental Cars, in order to rent a white GMC Yukon (GWM3969), using VISA credit card xxxxxxxxxxxx2512.

12. On or about March 2, 2017, **DAMYIA ENGRAM** made a payment of $50.05 to Avis Budget Group, in order to rent a black Chevrolet Malibu (764WJR), using MASTERCARD credit card xxxxxxxxxxxx8920.

13. On or about March 14, 2017, **RAJAH SWAIN** made a payment of $708.60 to EAN Holdings dba Enterprise Rental Cars, in order to rent a white Hyundai Santa Fe (VRA9495), using VISA credit card xxxxxxxxxxxx2512.

14. On or about March 19, 2017, **DAMYIA ENGRAM** made a payment of $498.53 to Avis Budget Group, in order to rent a silver Chevrolet Malibu (3D16Y0), using MASTERCARD credit card xxxxxxxxxxxx8920.

15. On or about April 7, 2017, **SHONDA JONES** made a payment of $330.96 to EAN Holdings dba Enterprise Rental Cars, in order to rent a black Nissan Altima (EVIF73), using MASTERCARD credit card xxxxxxxxxxxx4295.

16. On or about April 9, 2017, **DAMYIA ENGRAM** made a payment of $983.84 to Avis Budget Group, in order to rent a black Ford Taurus (558WNL), using MASTERCARD credit card xxxxxxxxxxxx8920.

17. On or about April 19, 2017. **SHONDA JONES** made a payment of $352.69 to EAN Holdings dba Enterprise Rental Cars, in order to rent a black Dodge Durango (FXB3415) using MASTERCARD credit card xxxxxxxxxxxx4295.

18. On or about April 20, 2017, **THOMESHA WALKER** subscribed utilities for 1609 Governor Terrace.

19. On or about April 20, 2017, **SHERICA SHIELDS** signed a lease for 1609 Governor Terrace.

20. On or about May 10, 2017, **DAMYIA ENGRAM** made a payment of $956.59 to Avis Budget Group, in order to rent a gray Ford Explorer (464WVV), using MASTERCARD credit card xxxxxxxxxxxx8920.

21. On or about May 15, 2017, **THOMESHA WALKER** rented 2108 Washington Circle and placed the utilities in her name.

22. On or about May 26, 2017, **DAMYIA ENGRAM** made a payment of $650.56 to Avis Budget Group, in order to rent a silver Hyundai Santa Fe (8B92J1), using MASTERCARD credit card xxxxxxxxxxxx5012.

23. On or about May 30, 2017 **SHONDA JONES** made a payment of $250 to EAN Holdings dba Enterprise Rental Cars, for deposit/rental of a brown Nissan Maxima (UL1A4K), using MASTERCARD credit card xxxxxxxxxxxx4295.

24. On or about May 31, 2017, **KEYSEAN DICKEY** tells **RAJAH SWAIN** to deposit "checks" into an account.

25. On or about June 2, 2017, **THOMESHA WALKER** told **KEYSEAN DICKEY** that she counted $18,000 for **DICKEY**, and that she was keeping approximately $2,000 from DICKEY.

26. On or about June 5, 2017, **DAMYIA L. ENGRAM** and **KEYSEAN DICKEY** discussed returning a vehicle, and ENGRAM asked for money.

27. On or about June 6, 2017, **RAJAH AMIRE SWAIN** tells **KEYSEAN DICKEY** that she will get **DICKEY's** cousin a telephone.

28. On or about June 7, 2017, **DAMYIA L. ENGRAM** and **KEYSEAN DICKEY** discussed calling the rental company and **ENGRAM** getting sent out to the airport to get a car.

29. On or about June 7, 2017, **SHERICA SHIELDS** and **KEYSEAN DICKEY** discuss **DICKEY** having a firearm.

30. On or about June 8, 2017, **KEYSEAN DICKEY** directs **RAJAH SWAIN** to pick up [something] from 3019 Bracken Woods Lane APT 1 and deliver it to 1405 Joseph Street.

31. On or about June 12, 2017, during a telephone conversation between **SHONDA JONES** and **KEYSEAN DICKEY**, **JONES** comes to Williamsburg to give **DICKEY** a rental car.

32. On or about June 13, 2017, **KEYSEAN DICKEY** was involved in using a silver Dodge Durango to pick an item up from ARI HODGES at Exclusive Sounds Inc.

33. On or about June 13, 2017, **SHERICA SHIELDS** and **KEYSEAN DICKEY** discuss possible surveillance.

34. On or about June 13, 2017, **KEYSEAN DICKEY** told **SHERICA SHIELDS** "things are slow."

35. On or about June 15, 2017, in a telephone conversation between **SHONDA JONES** and **KEYSEAN DICKEY**, **JONES** and **DICKEY** discussed **JONES** going to the airport to switch [the Durango] for another vehicle.

36. On or about June 18, 2017, **KEYSEAN DICKEY** told **RAJAH SWAIN** to meet him because he had money in the car that he made off the "licks."

37. On or about June 19, 2017, **SHERICA SHIELDS** told **KEYSEAN DICKEY** that she was about go look at building 73.

38. On or about June 19, 2017, **DAMYIA ENGRAM** and **KEYSEAN DICKEY** discussed the return of a rental vehicle, **ENGRAM** also asked **DICKEY** to put money into her Chase bank account first, to which **DICKEY** agreed.

39. On or about June 19, 2017, **DAMYIA ENGRAM** told **KEYSEAN DICKEY** that she has to hit licks just like Keysean hits licks.

40. On or about June 21, 2017, **KEYSEAN DICKEY** asks **RAJAH SWAIN** for a car, to "hit these licks."

41. On or about June 23, 2017, **SHERICA SHIELDS** and **KEYSEAN DICKEY** discuss getting the keys for 7303 Constitution Drive on Monday (June 26, 2017).

42. On or about June 26, 2017, in a telephone conversation between **SHONDA JONES** and **KEYSEAN DICKEY**, **JONES** asks **DICKEY** if he's heard anything and then tells **DICKEY** to call her from another number.

All in violation of 18 U.S.C. § 1956(h).

### COUNTS 26-31
### (MONEY LAUNDERING)

On or about the dates set forth below, in the Southern District of Ohio, defendant(s) **KEYSEAN DEARIS DICKEY a/k/a "Mike"** and **RAJAH AMIRE SWAIN** did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce as described below, which involved the proceeds of a specified unlawful activity, that is, narcotics trafficking, with the intent to promote the carrying on of specified unlawful activity, to wit: the sale or distribution of controlled substances as defined in the Controlled Substances Act and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| 26 | 09/19/2016 | Payment to EAN Holdings dba Enterprise Rental Cars for deposit/rental of gray Nissan Altima (E212185) for $250 using VISA card xxxxxxxxxxxx5799 |
| 27 | 10/07/2016 | Payment to EAN Holdings dba Enterprise Rental Cars for rental of white Hyundai Santa Fe (GSK9291) for $515.26 using VISA card xxxxxxxxxxxx5799 |
| 28 | 10/21/2016 | Payment to EAN Holdings dba Enterprise Rental Cars for rental of black Nissan Maxima (GXF3417) for $540.44 using VISA card xxxxxxxxxxxx4368 |
| 29 | 01/20/2017 | Payment to EAN Holdings dba Enterprise Rental Cars for rental of brown Nissan Altima (GXV8554) for $612.09 using VISA credit card xxxxxxxxxxxx2512 |

| 30 | 02/22/2017 | Payment to EAN Holdings dba Enterprise Rental Cars for rental of white GMC Yukon (GWM3969) for $886.99 using VISA credit card xxxxxxxxxxxx2512 |
| 31 | 03/14/2017 | Payment to EAN Holdings dba Enterprise Rental Cars for rental of white Hyundai Santa Fe (VRA9495) for $708.60 using VISA credit card xxxxxxxxxxxx2512 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 2.

### COUNTS 32-34
### (MONEY LAUNDERING)

On or about the dates set forth below, in the Southern District of Ohio, defendant(s)

**KEYSEAN DEARIS DICKEY a/k/a "Mike"** and **SHONDA DENISE JONES** did knowingly

conduct and attempt to conduct financial transactions affecting interstate and foreign commerce as

described below, which involved the proceeds of a specified unlawful activity, that is, narcotics

trafficking, with the intent to promote the carrying on of specified unlawful activity, to wit: the

sale or distribution of controlled substances as defined in the Controlled Substances Act and that

while conducting and attempting to conduct such financial transaction knew that the property

involved in the financial transaction represented the proceeds of some form of unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
| --- | --- | --- |
| 32 | 04/07/2017 | Payment to EAN Holdings dba Enterprise Rental Cars for rental of black Nissan Altima (EVIF73) for $330.96 using MASTERCARD credit card xxxxxxxxxxxx4295 |
| 33 | 4/19/2017 | Payment to EAN Holdings dba Enterprise Rental Cars for rental of black Dodge Durango (FXB3415) for $352.69 using MASTERCARD credit card xxxxxxxxxxxx4295 |
| 34 | 05/30/2017 | Payment to EAN Holdings dba Enterprise Rental Cars for deposit/rental of brown Nissan Maxima (UL1A4K) for $250 using MASTERCARD credit card xxxxxxxxxxxx4295 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 2.

## COUNTS 35-44
## (MONEY LAUNDERING)

On or about the dates set forth below, in the Southern District of Ohio, defendant(s)

**KEYSEAN DEARIS DICKEY a/k/a "Mike"** and **DAMYIA L. ENGRAM** did knowingly

conduct and attempt to conduct financial transactions affecting interstate and foreign commerce as

described below, which involved the proceeds of a specified unlawful activity, that is, narcotics

trafficking, with the intent to promote the carrying on of specified unlawful activity, to wit: the

sale or distribution of controlled substances as defined in the Controlled Substances Act and that

while conducting and attempting to conduct such financial transaction knew that the property

involved in the financial transaction represented the proceeds of some form of unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| 35 | 09/19/2016 | Payment to Avis Budget Group for rental of red Nissan Altima (QFP6235) for $247.98 using MASTERCARD credit card xxxxxxxxxxxx8920 |
| 36 | 09/27/2016 | Payment to Avis Budget Group for rental of white Ford Escape (BPBQ27) for $186.28 using MASTERCARD credit card xxxxxxxxxxxx8920 |
| 37 | 10/04/2016 | Payment to Avis Budget Group for rental of silver Subaru XVCR (GVN7813) for $197.68 using MASTERCARD credit card xxxxxxxxxxxx8920 |
| 38 | 12/15/2016 | Payment to EAN Holdings dba Enterprise Rental Cars for rental of black GMC Yukon (GXV8665) for $659.02 using MASTERCARD credit card xxxxxxxxxxxx8920 |
| 39 | 02/15/2017 | Payment to Avis Budget Group for rental of red Hyundai Accent (GPF5904) for $101.92 using MASTERCARD credit card xxxxxxxxxxxx5012 |
| 40 | 03/2/2017 | Payment to Avis Budget Group for rental of black Chevrolet Malibu (764WJR) for $50.05 using MASTERCARD credit card xxxxxxxxxxxx8920 |
| 41 | 03/19/2017 | Payment to Avis Budget Group for rental of silver Chevrolet Malibu (3D16Y0) for $498.53 using MASTERCARD credit card xxxxxxxxxxxx8920 |
| 42 | 04/09/2017 | Payment to Avis Budget Group for rental of black Ford Taurus (558WNL) for $983.84 using MASTERCARD credit card xxxxxxxxxxxx8920 |
| 43 | 05/10/2017 | Payment to Avis Budget Group for rental of gray Ford Explorer (464WVV) for $956.59 using MASTERCARD credit card xxxxxxxxxxxx8920 |

| 44 | 05/26/2017 | Payment to Avis Budget Group for rental of silver Hyundai Santa Fe (8B92J1) for $650.56 using MASTERCARD credit card xxxxxxxxxxxx5012 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 2.

## COUNT 45
## (MONEY LAUNDERING)

On or about the June 2, 2017, in the Southern District of Ohio, defendant **THOMESHA**

**WALKER** did knowingly conduct and attempt to conduct financial transactions affecting

interstate and foreign commerce as described below, which involved the proceeds of a specified

unlawful activity, that is, narcotics trafficking, with the intent to promote the carrying on of

specified unlawful activity, to wit: the sale or distribution of controlled substances as defined in

the Controlled Substances Act and that while conducting and attempting to conduct such financial

transaction knew that the property involved in the financial transaction represented the proceeds

of some form of unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|------------------------|
| 45 | 06/02/2017 | Obtained approximately $2,000 from KEYSEAN DICKEY as compensation for renting properties for the DICKEY DTO to use as stash locations for illegal narcotics and for proceeds from illegal distribution of narcotics |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 2.

## FORFEITURE ALLEGATION 1

Upon conviction of one or more of the offenses set forth in Counts 1 - 22 of this Indictment,

defendants **KEYSEAN DEARIS DICKEY a/k/a "Mike", EDMOND CHRISTIAN HURT**

**a/k/a "Eddie", RAJAH AMIRE SWAIN, CHRISETTE CAMILLA WADE, ARI NAIEM**

**HODGES a/k/a "Big Mike" "Fat Mike" "Bundles", DA'MARCO MARTEZ BROWNER II**

**a/k/a "Baby D" "Kid", DOMINIC DASHAWN DAVIS, CHAZ NIKO JONES a/k/a "Juice"**

"Z", **CHRISTOPHER JAVAR MATHEWS a/k/a "Jay" "Smash", KIARRA C. THOMAS, MYKEAL DASHAWN PARKER, DEVONTE SHAUNQUINN WALKER, DAMYIA L. ENGRAM, THOMESHA WALKER, SHONDA DENISE JONES, SHERICA LYNNAE SHIELDS** shall forfeit to the United States pursuant to 21 U.S.C. § 853(a):  (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the said violations; and (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations.

### FORFEITURE ALLEGATION 2

Upon conviction of one or more of the offenses set forth in Counts 25-45 of this Indictment, defendants **KEYSEAN DEARIS DICKEY a/k/a "Mike", RAJAH AMIRE SWAIN, DAMYIA L. ENGRAM, THOMESHA WALKER, and SHONDA DENISE JONES** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

### FORFEITURE ALLEGATION 3

Upon conviction of one or more of the offenses set forth in Counts 25-45 of this Indictment, defendants **KEYSEAN DEARIS DICKEY a/k/a "Mike", RAJAH AMIRE SWAIN, SHONDA DENISE JONES, DAMYIA L. ENGRAM,** and **THOMESHA WALKER** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a), any property, real or personal, involved in such offense, and any property traceable to such property.

### FORFEITURE ALLEGATION 4

Upon conviction of any or all of the offenses set forth in this Indictment, defendant **KEYSEAN DEARIS DICKEY a/k/a "Mike"** shall forfeit to the United States pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in the commission of the offenses, including, but not limited to a loaded FN .57 caliber pistol, serial number 386148033 with ammunition.

Substitute Assets

If any of the above-described forfeitable property, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

**A True Bill.**

/s/
_____
**Grand Jury Foreperson**

BENJAMIN C. GLASSMAN
United States Attorney

_____
KARL P. KADON
Assistant United States Attorney
Organized Crime Drug Enforcement Task Force